**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| KEVIN LOUVIERRE, Individually and on Behalf of Others Similarly Situated, | Case No.: 1:22-cv-00173 |
| v. | Jury Trial Demanded |
| CHEROKEE CONTRACTORS CORPORATION | |

**ORIGINAL COMPLAINT**

**SUMMARY**

1. Kevin Louvierre (Louvierre) brings this class and collective action lawsuit to recover the unpaid overtime wages and other damages from Cherokee Contractors Corporation (Cherokee) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the New Mexico Minimum Wage Act (NMMWA), NMSA § 50-4-19, *et seq*.

2. Louvierre worked for Cherokee as an Inspector in and around New Mexico and Iowa.

3. Louvierre and the other Day Rate Inspectors' (as defined below) job duties included inspecting the interstate pipelines to ensure the safe transportation of goods.

4. Louvierre and the other Day Rate Inspectors regularly work in excess of 40 hours each week.

5. Instead of paying proper overtime, Cherokee paid Louvierre and other Day Rate Inspectors a flat amount for each day worked (a "day rate") that Cherokee disguises as an hourly rate plus overtime compensation when they worked in excess of 40 hours in a workweek in violation of the FLSA and the NMMWA.

6. Cherokee never paid Louvierre and the Day Rate Inspectors a guaranteed salary.

7. This class and collective action seeks to recover unpaid overtime wages and other damages owed to these workers.

**JURISDICTION AND VENUE**

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court also has supplemental jurisdiction over the NMMWA claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

11. Specifically, Louvierre worked for Cherokee throughout New Mexico.

**PARTIES**

12. Louvierre worked for Cherokee as a Utility Inspector from approximately August 2019 through October 2020.

13. Throughout his employment, Cherokee paid Louvierre a flat daily rate for all the hours he worked including those in excess of 40 in a workweek ("day rate pay plan").

14. Louvierre's consent to be a party plaintiff is attached as Exhibit 1.

15. Louvierre brings a FLSA collective action on behalf of himself and all other Cherokee's Day Rate Inspectors who were paid according to Cherokee's disguised day rate pay plan.

16. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All Inspectors employed by, or working on behalf of, Cherokee who were paid a day rate without overtime at any time in the past 3 years (FLSA Class Members).**

17. In addition to the FLSA Class, Louvierre seeks to represent the following class under the NMMWA pursuant to Rule 23:

> **All Inspectors employed by, or working on behalf of, Cherokee who were paid a day rate without overtime in New Mexico at any time in the past 3 years (New Mexico Class Members).**

18. The FLSA Class Members and the New Mexico Class Members will be collectively referred to as the Day Rate Inspectors.

19. Cherokee can be served with process through the New Mexico Secretary of State pursuant to NM Stat. § 38-1-5.

## COVERAGE UNDER THE FLSA

20. At all relevant times, Cherokee has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21. At all relevant times, Cherokee has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22. At all relevant times, Cherokee has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Cherokee has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

23. In each of the last 3 years, Cherokee has had an annual gross volume of sales made or business done of at least $500,000.

24. At all relevant times, Louvierre and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

25. Indeed, Louvierre and the Day Rate Inspectors were engaged in foreign and/or interstate commerce and work on the channels and instrumentalities of interstate commerce, including but not limited to oil and gas pipelines across the country.

26. Cherokee treated Louvierre and the Day Rate Inspectors as employees and uniformly dictated the pay practices it applied to Louvierre and the Day Rate Inspectors.

27.     Indeed, Cherokee uniformly applied its policy of paying the Day Rate Inspectors, including Louvierre, a day rate with no overtime compensation.

28.     Cherokee applied this uniform pay scheme regardless of any alleged individualized factors such as precise inspector job position, pipeline, job duties/responsibilities, client assignments, or geographic location.

29.     By paying its Inspectors a day rate with no overtime compensation, Cherokee violated (and continues to violate) the FLSA's requirement that it pay overtime compensation at 1 and 1⁄2 times their regular rates for hours worked in excess of 40 in a workweek.

30.     As a result of Cherokee's day rate pay policy, Louvierre and the Day Rate Inspectors do not receive overtime as required by the FLSA.

31.     Cherokee's uniform compensation scheme of paying its employees a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. (29 U.S.C. § 207(a), (e).

**FACTS**

32.     Cherokee "specializes in managed staffing services supporting the energy sector."[1]

33.     To complete its business objectives, Cherokee hires Inspectors, including Louvierre and the Day Rate Inspectors, to inspect, observe, and test the workmanship and materials for compliance with its policies and procedures, including the plans, specifications, and applicable codes.

34.     Louvierre and the Day Rate Inspectors provide necessary inspection services to oil and gas pipelines across the United States.

---

[1] https://www.cherokeecontractorscorp.com (last visited February 16, 2022).

35. Indeed, Louvierre and the Day Rate Inspectors inspect the work on oil and gas pipelines to ensure they are constructed in accordance with Cherokee's (and its clients') standards, protocols, and construction plans, as well as federal and state regulations.

36. Cherokee's clients are companies that own and operate pipelines that Louvierre and the Day Rate Inspectors work on.

37. Cherokee relies on the inspection services Louvierre and the Day Rate Inspectors provide so its clients' pipelines can safely transport goods, including oil and gas.

38. Cherokee's clients typically maintain pipelines that enable the movement of goods and services across state lines as a stream of interstate commerce.

39. Without the inspection services Louvierre and the Day Rate Inspectors provide to Cherokee and its clients, oil and gas would not be able to travel across state lines through the pipelines on which Louvierre and the Day Rate Inspectors work.

40. Indeed, the inspection services Louvierre and the Day Rate Inspectors provide to Cherokee and its clients is necessary to keep the intra- and interstate flow of oil and gas.

41. Louvierre and the Day Rate Inspectors, in part, ensure Cherokee's (and its clients') appropriate compliance with state and federal safety and regulatory requirements.

42. The Pipeline and Hazardous Materials Safety Administration sets federal standards that pipelines must comply with in their operation.

43. Louvierre and the Day Rate Inspectors assist Cherokee's clients in meeting all operation requirements set forth by the Pipeline and Hazardous Materials Safety Administration on a federal level and related state agencies.

44. The inspection services Louvierre and the Day Rate Inspectors provide to Cherokee and its clients immediately and necessarily precedes the action of oil and gas flowing along interstate pipelines across the country.

45. Louvierre and the Day Rate Inspectors' work is centered on ensuring the safe transport of oil and gas along intra- and interstate pipelines across the country by making sure the pipelines necessary to transport oil and gas to its ultimate destination are constructed and/or repaired in accordance with established standards, procedures, plans, and regulations.

46. Cherokee does not hire Louvierre and the Day Rate Inspectors on a project-by-project basis.

47. Rather, Cherokee hires and treats these Inspectors just like regular, even if sometimes short-term, employees.

48. Many of these Inspectors worked for Cherokee on a day rate basis and make up the proposed putative class of Day Rate Inspectors.

49. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

50. For example, Louvierre worked for Cherokee as a Utility Inspector from approximately August 2019 through October 2020.

51. Throughout his employment with Cherokee, Cherokee paid Louvierre on a day rate basis with no overtime pay.

52. Cherokee paid Louvierre and the Day Rate Inspectors a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to pay them overtime when they worked in excess of 40 hours in a workweek.

53. Louvierre and the Day Rate Inspectors do not receive a guaranteed salary.

54. Cherokee only pays Louvierre and the Day Rate Inspectors their day rate or the actual days they worked.

55. If Louvierre and the Day Rate Inspectors did not work, they did not get paid.

56. Louvierre and the Day Rate Inspectors receive a day rate.

57. Louvierre and the Day Rate Inspectors do not receive overtime pay.

58. This is despite the fact Louvierre and the Day Rate Inspectors often work at least 12-16 hours a day, for up to 7 days a week, for weeks at a time.

59. For example, Louvierre received a day rate of approximately $140.10, exclusive of per diem and tool and equipment reimbursements, per day:



60. Louvierre's and the Day Rate Inspectors' day rate is derived by dividing their weekly gross pay by the number of days worked.

61. Cherokee attempts to disguise its day rate pay scheme as an hourly rate plus overtime system, but it pays Louvierre and the Day Rate Inspectors the same amount per day (based on a 10-hour day), regardless of the number of hours that they worked.

62. Although Louvierre and the Day Rate Inspectors typically worked 5-7 days a week, for at least 12-16 hours a day, they did not receive proper overtime pay.

63. Louvierre and the Day Rate Inspectors work in accordance with the schedule set by Cherokee.

64. Louvierre's work schedule is typical of the Day Rate Inspectors.

65. Cherokee knows Louvierre and the Day Rate Inspectors work for at least 12-16 hours a day, for up to 7 days a week, for weeks at a time.

66. Cherokee's records reflect the fact that Louvierre and the Day Rate Inspectors regularly work far more than 40 hours in certain workweeks.

67. Cherokee does not pay Louvierre or the Day Rate Inspectors overtime for hours worked in excess of 40 in any of those weeks.

68. Instead, Cherokee pays Louvierre and the Day Rate Inspectors on a day rate basis.

69. Indeed, Cherokee controls Louvierre and the Day Rate Inspectors' pay.

70. For example, Louvierre received a day rate of approximately $486(which includes various per diem payments, such as equipment and lodging) for each day he worked for Cherokee.

71. Louvierre and the Day Rate Inspectors received their day rate regardless of the number of hours they worked in a day or week, even when they worked more than 40 hours in a workweek.

72. Louvierre and the Day Rate Inspectors are not employed on a salary basis.

73. Louvierre and the Day Rate Inspectors do not, and have never, received guaranteed weekly compensation from Cherokee irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

74. Cherokee's policy of paying Louvierre and the Day Rate Inspectors a day rate with no overtime compensation violates the FLSA and NMMWA because it deprives Louvierre and the Day Rate Inspectors of overtime for the hours they work in excess of 40 hours in a single workweek.

75. Cherokee controls Louvierre and the Day Rate Inspectors' work.

76. Cherokee requires Louvierre and the Day Rate Inspectors to follow Cherokee's policies and procedures.

77. Louvierre and the Day Rate Inspectors' work must adhere to the quality standards put in place by Cherokee.

78. Louvierre and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

79. As Inspectors, Louvierre and the Day Rate Inspectors' job duties include inspecting, observing, and testing the workmanship and materials for compliance with Cherokee's policies and procedures, including the plans, specifications, and applicable codes throughout the United States.

80. At all relevant times, Cherokee maintained control, oversite, and direction of Louvierre and the Day Rate Inspectors, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

81. Louvierre and the Day Rate Inspectors do not have the power to hire, fire, or discipline any Cherokee employees.

82. Very little skill, training, or initiative is required of Louvierre and the Day Rate Inspectors to perform their job duties.

83. Indeed, the daily and weekly activities of Louvierre and the Day Rate Inspectors are routine and largely governed by standardized plans, procedures, and checklists created by Cherokee.

84. Virtually every job function is predetermined by Cherokee, including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

85. Cherokee prohibits Louvierre and the Day Rate Inspectors from varying their job duties outside of the predetermined parameters and requires Louvierre and the Day Rate Inspectors to follow Cherokee's policies, procedures, and directives.

86. All of Cherokee's Day Rate Inspectors perform similar inspection job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

87. Louvierre's working relationship with Cherokee is similar to that of the Day Rate Inspectors.

88. Without the job performed by Louvierre and the Day Rate Inspectors, Cherokee would not be able to complete its business objectives of providing necessary pipeline inspection services to oil and gas pipelines.

89. Cherokee knew Louvierre, and other Day Rate Inspectors, worked more than 40 hours in a week.

90. Cherokee knew, or showed reckless disregard for whether, the Day Rate Inspectors were not exempt from the FLSA and NMMWA's overtime provisions.

91. Nonetheless, Cherokee failed to pay Louvierre and the Day Rate Inspectors overtime.

92. Cherokee knowingly, willfully, or in reckless disregard carried out this illegal day rate pay plan that deprived Louvierre and the Day Rate Inspectors of overtime compensation in violation of the FLSA and the NMMWA.

93. Cherokee's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

94. Cherokee willfully violated the FLSA and NMMWA.

### CAUSE OF ACTION
### FLSA VIOLATIONS

95. Cherokee's day rate pay plan violates the FLSA because Louvierre and the other Day Rate Inspectors did not receive overtime pay for hours worked over 40 in a week.

96. Cherokee knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

97. Cherokee's failure to pay overtime compensation to the Day Rate Inspectors was not based on any reasonable interpretation of the law.

98. Nor was Cherokee's decision not to pay overtime made in good faith.

99. Accordingly, Louvierre and all those who are similarly situated are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorney's fees, and costs.

### CAUSE OF ACTION
### NMMWA VIOLATIONS

100. Louvierre brings this claim under the NMMWA as a Rule 23 class action.

101. The conduct alleged herein violates the NMMWA. NMSA § 50-4-19 *et seq.*

102. At all relevant times, Cherokee was subject to the requirements of the NMMWA.

103. At all relevant times, Cherokee employed Louvierre and each New Mexico Class Member as an "employee" within the meaning of the NMMWA.

104. Cherokee's pay policy denied Louvierre and the New Mexico Class Members overtime compensation, as required by the NMMWA.

105. Cherokee's failure to pay Louvierre and the New Mexico Class Members overtime at rates not less than one and one-half times their regular rate violates the NMMWA. NMSA § 50-4-22(C).

106. Cherokee owes Louvierre and the New Mexico Class Members the difference between the rate actually paid and the proper overtime rate.

107. Cherokee is also liable to Louvierre and the New Mexico Class Members for "an additional amount equal to twice the unpaid ... wages" as treble damages. NMSA § 50-4-26(C).

108. Louvierre and the New Mexico Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action, as provided by the NMMWA. NMSA § 50-4-26(E).

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

109. The illegal pay practices Cherokee imposed on Louvierre were likewise imposed on the Day Rate Inspectors.

110. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and NMMWA.

111. Numerous other individuals who worked with Louvierre indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

112. Based on his experiences and tenure with Cherokee, Louvierre is aware that Cherokee's illegal practices were imposed on the Day Rate Inspectors.

113. The Day Rate Inspectors were all not afforded the overtime compensation when they worked more than 40 hours per week.

114. Cherokee's failure to pay wages and overtime compensation at the rates required by state and federal law, including the FLSA and NMMWA, result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Inspectors.

115. Louvierre's experiences are therefore typical of the experiences of the Day Rate Inspectors.

116. The specific job titles or precise job locations of the Day Rate Inspectors do not prevent collective treatment.

117. Louvierre has no interest contrary to, or in conflict with, the Day Rate Inspectors.

118. Like each Day Rate Inspector, Louvierre has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

119. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

120. Absent this class and collective action, many Day Rate Inspectors likely will not obtain redress of their injuries and Cherokee will reap the unjust benefits of violating the FLSA and NMMWA.

121. Furthermore, even if some of the Day Rate Inspectors could afford individual litigation against Cherokee, it would be unduly burdensome to the judicial system.

122. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

123. The questions of law and fact common to the Day Rate Inspectors predominate over any questions affecting solely the individual members.

124. Among the common questions of law and fact are:

   a. Whether Cherokee employed the Day Rate Inspectors within the meaning of the applicable state and federal statutes, including the FLSA and NMMWA;

   b. Whether the Day Rate Inspectors were improperly misclassified as exempt from the FLSA;

   c. Whether Cherokee's decision to classify the Day Rate Inspectors as exempt was made in good faith;

   d. Whether Cherokee's day rate pay practice satisfies the salary basis test;

   e. Whether Cherokee's decision to not pay time and a half for overtime to the Day Rate Inspectors was made in good faith;

   f. Whether Cherokee's violation of the FLSA was willful; and

   g. Whether Cherokee's illegal pay practices were applied uniformly across the nation to all Day Rate Inspectors.

125. Louvierre's claims are typical of the claims of the Day Rate Inspectors. Louvierre and the Day Rate Inspectors sustained damages arising out of Cherokee's illegal and uniform employment policy.

126. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

127. Therefore, this issue does not preclude class or collective action treatment.

## JURY DEMAND

128. Louvierre demands a trial by jury.

## RELIEF SOUGHT

129. Wherefore, Louvierre prays for:

   (a) For an Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. ¬ß 216(b) to the Day Rate Inspectors with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. ¬ß 216(b);

   (b) For an Order appointing Louvierre as representative and his counsel to represent the interests of the FLSA Class and the New Mexico Class;

   (c) For an Order finding Cherokee liable to Louvierre and the FLSA Class for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

   (d) For an Order finding Cherokee liable to Louvierre and the New Mexico Class for unpaid overtime owed under the FLSA, as well as treble damages in an amount equal to twice their unpaid compensation;

   (e) Certification of the New Mexico Class pursuant to Fed. R. Civ. P. 23;

   (f) For an Order awarding attorneys' fees, costs and pre- and post-judgment interest at the highest available rates; and

   (g) For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **Rachael Rustmann**
    Texas Bar No. 24073653
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rrustmann@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF & THE PUTATIVE CLASS MEMBERS**

Case 1:22-cv-00173-GBW-JFR   Document 1   Filed 03/07/22   Page 15 of 15

- 15 -